# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2023 CA 1291

## LLOYD FALGOUT

### VERSUS

## AMERICAN ALTERNATIVE INSURANCE CORPORATION, BAYOU CANE FIRE PROTECTION DISTRICT, AND KENNETH HIMEL

*Smm by CHH*

*CHH*

Judgment Rendered: **JUN 2 7 2024**

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 189008

The Honorable Timothy C. Ellender Jr., Judge Presiding

Tommy J. Badeaux
Metairie, Louisiana

Joseph L. Waitz, Jr.
Houma, Louisiana

Counsel for Plaintiff/Appellee,
Lloyd Falgout

T. Gregory Schafer
Timothy G. Schafer
New Orleans, Louisiana

Danna E. Schwab
Patricia Reeves Floyd
Houma, Louisiana

Counsel for Defendants/Appellants,
American Alternative Insurance
Corporation, Kenneth Himel, and
Bayou Cane Fire Protection District

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

*McClendon, J. concurs for reasons assigned.*

**MILLER, J.**

This matter is before us on appeal by defendants, American Alternative Insurance Corporation, Bayou Cane Fire Protection District, and Kenneth Himel, from a judgment of the trial court in favor of plaintiff, Lloyd Falgout. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 9, 2019, Lloyd Falgout ("Falgout") was driving through a green light when his vehicle was struck by a vehicle being driven by Kenneth Himel ("Himel") and owned by Bayou Cane Fire Protection District ("Bayou Cane"). On July 7, 2020, Falgout filed a petition for damages, naming American Alternative Insurance Corporation ("AAIC"), Bayou Cane, and Himel as defendants. Falgout alleged he sustained physical and mental injuries as a result of the accident. AAIC, Bayou Cane, and Himel filed an answer on April 28, 2021, generally denying the allegations contained in the petition.

At the beginning of the trial, the parties stipulated that Bayou Cane and Himel were insured by AAIC in the amount of $1,000,000.00 for each accident, along with an umbrella policy in the amount of $4,000,000.00 per occurrence; Himel was on duty with Bayou Cane at the time of the accident; Himel was solely at fault in causing the accident; Bayou Cane is a political subdivision of the State of Louisiana; the total liability of Bayou Cane for personal injury to Falgout, exclusive of medical care and related benefits, loss of earnings and loss of future earnings could not exceed $500,000.00 under La. R.S. 13:5106(B)(1); and certain surveillance films of Falgout were authenticated.

A bench trial was held on May 4, 2023, and the trial court took the matter under advisement. On June 21, 2023, the trial court rendered its judgment in open court, awarding Falgout $1,686,198.19, which included $147,254.55 in past medical expenses; $538,943.64 in future medical expenses; $250,000.00 in past,

2

present, and future pain and suffering for the shoulder injuries; $750,000.00 in past, present, and future pain and suffering for neck and back injuries; and $0 for lost earnings and future lost earnings. The judgment provided that the limitation of liability provided by La. R.S. 13:5106[1] applied so general damages were reduced from $1,000,000.00 to $500,000.00. Thus, the trial court rendered judgment in favor of Falgout and against AAIC, Bayou Cane, and Himel, in the amount of $1,186,198.19, together with judicial interest of six percent per annum pursuant to La. R.S. 13:5112[2] on the amount of $647,254.46, from the date service of the original petition was requested until the judgment was signed. Thereafter, pursuant to the judgment, legal interest would accrue, on the amount of $647,254.46, at the rate fixed by La. R.S. 9:3500. Further, the judgment provided that pursuant to La. R.S. 13:5106, a reversionary trust was established to govern the use and administration of the award of future medical expenses. The trial court signed its judgment on August 10, 2023.

AAIC, Bayou Cane, and Himel appealed the August 10, 2023 judgment, contending the trial court erred in determining Falgout was a truthful witness and the trial court erred in allowing Falgout's expert witness, Larry S. Stokes, PhD (life care planning and vocational rehabilitation expert), to offer an opinion at trial that was not present in his written report without notice.[3]

---

[1] Louisiana Revised Statute 13:5106(B)(1) provides:

> The total liability of the state and political subdivisions for all damages for personal injury to any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the personal injury to that person.

[2] Under La. R.S. 13:5112(C), legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date service is requested following judicial demand until the judgment thereon is signed by the trial judge in accordance with La. C.C.P. art. 1911.

[3] On January 18, 2024, Falgout filed a motion to consolidate in this court, seeking to consolidate appeals in 2023 CA 1261 and 2023 CA 1291. On March 5, 2024, this court issued an order granting the motion to consolidate. Pursuant to the order, the appeals were "consolidated for

3

## DISCUSSION

In their first assignment of error, AAIC, Bayou Cane, and Himel allege the trial court erred in its determination that Falgout was a truthful witness. First, the defendants contend Falgout failed to inform his treating physicians that he had left shoulder pain and/or back pain before the accident occurred. Specifically, they allege the records of Jake Bordelon, DC (chiropractor), Samer Shamieh, MD (orthopedist), Christopher Cenac, Jr., MD (orthopedist and independent medical evaluation), and Michael Haydel, MD (pain management doctor) all indicate Falgout did not have or did not mention he had shoulder and/or back pain before the accident. Second, the defendants contend Falgout made false statements to the Internal Revenue Service ("IRS") regarding his income by failing to report or under-reporting his income during 2016 and 2020. Third, the defendants assert Falgout intentionally made false statements to the Social Security Administration when he applied for disability benefits in 2018 because he indicated he was unable to work from 2015 to 2018, but he started working in 2016 as an independent contractor. Fourth, the defendants claim Falgout omitted facts when he was interviewed by Dr. Stokes because Falgout did not disclose his prior back pain. Finally, the defendants contend Falgout admitted at trial that he lied during his deposition when he denied suffering from left shoulder pain and low back pain before the accident.

At trial, the factfinder is charged with assessing the credibility of the witness and is free to accept or reject, in whole or in part, the testimony of any witness. Vitter v. Blaize, 2022-1369 (La. App. 1st Cir. 9/20/23), 376 So. 3d 193, 199. Where

---

argument and submission only, and the parties [were] to continue to file pleadings in each individual numbered case if it [was] to be considered in that case." In his motion to consolidate appeals and in his appellee brief filed in 2023 CA 1291, Falgout stated that he filed an answer to this appeal (2023 CA 1291). While Falgout did file an answer to the other appeal (2023 CA 1261), he did not file an answer to this appeal (2023 CA 1291). Therefore, we cannot consider the arguments raised in Falgout's appellee brief regarding future lost earnings and limitation of liability under La. R.S. 13:5106. See La. C.C.P. art. 2133.

4

there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Id. Additionally, only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Thus, the factfinder's credibility determinations demand great deference and will not be disturbed on appeal absent manifest error. Kott v. Kott, 2020-0873 (La. App. 1st Cir. 4/16/21), 324 So. 3d 165, 171-72. Further, when documents or objective evidence contradict the witness's story or the story itself is so internally inconsistent on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error. Marcello v. Jo-Blanche Corporation, 2020-1113 (La. App. 1st Cir. 6/4/21), 330 So. 3d 632, 639-40, writ denied, 2021-01666 (La. 1/19/22), 331 So. 3d 330.

The defendants argue Falgout was untruthful when relaying information to his treating doctors, the IRS, the Social Security Administration, and Dr. Stokes and in his deposition testimony. However, it is evident from the trial court's statements it accepted Falgout's explanations for his untruthfulness and found him to be credible – at least as required to substantiate his claims. During trial, Falgout stated he had "a muscle-type pain" in his back before the accident and he could pick up things, put them over his head, and bend down. He stated that before the accident he had a "minor, irritating pain" in his muscles and lower back but after the accident he had "striking pain." Falgout also testified regarding his taxes. When asked whether he filed taxes from 2014 through 2017, Falgout stated he did not because he could barely afford to live and he owned a bar at the time, which paid for all of his needs. He indicated he did not file a 1099 in 2020, but "[the State] took $4,000 to pay for those taxes."

In regard to his application to the Social Security Administration, Falgout testified his sister encouraged him to apply for the assistance. He stated he filled

out the application due to his heart condition but included his back issues after his sister suggested he do so. Falgout justified his application wherein he wrote that he had not worked from 2015 to 2018 (when he had been employed since 2016) by stating he thought employment meant full time employment through which the applicant made a certain amount of money per year. He further stated that he reported that he was not working to the Social Security Administration because he "was trying to get Social Security."

Further, Falgout was asked whether he was truthful during his deposition when he stated he had not had prior left shoulder pain or low back pain, and he replied that he was not. He was also asked whether the statement he made during his deposition that he had never had an MRI was truthful, and Falgout stated it was not but he did not remember at the time whether he had had one.

The trial court accepted Dr. Stokes as an expert in life care planning and vocational rehabilitation. Dr. Stokes's testified that Falgout had disclosed prior injuries to his left shoulder and elbow, and Dr. Stokes did consider those prior injuries when formulating his expert opinion. However, Dr. Stokes testified that Falgout did not mention his history of low back pain. Still, Dr. Stokes stated the work Falgout did in the construction industry was physically demanding, so Falgout was able to overcome any prior back pain to do that type of work.

The statements made by the trial court when rendering its judgment indicate the trial court recognized Falgout was untruthful and withheld information at times. Nevertheless, the trial court indicated it was able to understand the inconsistencies and it found Falgout to be a credible witness. Specifically, the trial court stated,

> Mr. Falgout testified. And certainly in any personal injury action, it not necessarily rises and falls with the plaintiff's testimony, but it's safe to say that the plaintiff's testimony -- at least in this case -- was a critical part of this case. The defendants did a swell job of attempting to impeach Mr. Falgout as to his past medical experiences,

6

reporting his medical conditions, prior incidents of injuries and accidents, his applications in the IRS and Social Security applications for disability and for tax returns. And Mr. Schafer correctly pointed out a number of discrepancies in Mr. Falgout's previous statements.

Mr. Falgout testified that he has had a long-running experience with personal injuries involving these parts, some of the same parts of his body that he claims to have injured as a result of this accident. And while he was able to acknowledge some of the falsities of some applications made in Social Security disability what-not, he testified from his own personal experience the nature of his injuries, his previous injuries, his work experience after the injuries, and his accommodations that have been made to his profession working ... since this 2019 accident.

The Court is of the opinion that based upon his testimony and the testimony of I think every single doctor that Mr. Falgout's injuries complained of in this accident were at the very least an aggravation of a pre-existing condition, to which the defendant owes a responsibility and a liability under [La. C.C. art.] 2315 to make the plaintiff whole to the furthest extent of his aggravation.

The record is clear that after these injuries in 2019, Mr. Falgout sought medical treatment, went through a number of courses of treatment, and submitted also to an independent medical exam conducted by the orthopedic surgeon chosen by the defendant to conduct this independent medical examination, which testimony was consistent with the other doctors' testimony and consistent with Mr. Falgout's complaints that these injuries were the cause, were caused by the accident of July 9th, 2019.

As to the discrepancies in Mr. Falgout's testimony, I feel like his actions speak louder [than] his words. ... And it appears as though since 2019, Mr. Falgout attempted to make accommodations with his work ... and did his best to return to his occupation and, in fact, did return. And it turns out, made more money after the accident than he did before the accident. If that doesn't show a willingness to mitigate damages, I don't know what does.

And so I'm convinced by a preponderance of the evidence that Mr. Falgout was being truthful as to his injuries in relating them back to the July 9th, 2019 accident, which is also consistent with the medical testimony of all the doctors, including and especially Dr. Cenac who was chosen by the defendants to evaluate the plaintiff from an independent standpoint.

The trial court was able to observe Falgout's variations in demeanor and tone of voice and determined Falgout was being truthful as to his injuries. While Falgout may have been untruthful at times, the trial court felt he was forthcoming at trial and adequately explained why he did not always file his taxes on time and

why he did not fill out the application with the Social Security Administration accurately. He further explained why he stated he did not have back or shoulder pain before the accident. This court must give great weight to factual conclusions of the trier-of-fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Aaron v. Exxon Mobil Corporation, 2018-0476 (La. App. 1st Cir. 12/27/18), 271 So. 3d 205, 215. After reviewing the evidence, we find the trial court made reasonable evaluations of credibility and reasonable inferences of fact, and its findings were not clearly wrong. Thus, the trial court did not commit manifest error in determining Falgout was a credible witness. This assignment of error is without merit.

In their second assignment of error, AAIC, Bayou Cane, and Himel allege the trial court violated La. C.C.P. art. 1425(B) when it allowed Falgout's expert witness, Dr. Stokes, to offer an opinion at trial that was not present in his written report. They contend Falgout gave no notice that Dr. Stokes's testimony would be different from that contained in his report.

Louisiana Code of Civil Procedure article 1425(B) provides:

> Upon contradictory motion of any party or on the court's own motion, an order may be entered requiring that each party that has retained … a person to provide expert testimony in the case … provide a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions. The parties, upon agreement, or if ordered by the court, shall include in the report any or all of the following: exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

8

In considering expert testimony, the trial court may accept or reject in whole or in part the opinion expressed by an expert, even to the point of substituting its own common sense and judgment for that of an expert witness where, in the fact-finder's opinion, such substitution appears warranted by the evidence as a whole. The effect and weight to be given expert testimony is within the broad discretion of the trial court. Marr v. Marr, 2012-1551 (La. App. 1st Cir. 7/17/13), 2013 WL 3788409, *4 (unpublished). The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its broad discretion. Morgan v. State Farm Fire and Casualty Company, Inc., 2007-0334 (La. App. 1st Cir. 11/2/07), 978 So. 2d 941, 946.

Dr. Stokes is a licensed rehabilitation counselor and a certified life care planner. Dr. Stokes met with Falgout to conduct a life care plan assessment, and his report was based off of a clinical interview with Falgout, a review of available records provided by Falgout's attorney, correspondence from Dr. Shamieh, and the results of research. In his report, Dr. Stokes stated Falgout would need one anterior lumbar fusion at L5-S1 pursuant to the recommendation of Dr. Shamieh and opined the cost would range from $269,471.82 to $298,530.23. Thereafter, during his trial testimony, Dr. Stokes was asked a question regarding Dr. Cenac's opinion that Falgout would need a second anterior lumbar fusion at L5-S1 in 20 years. Counsel for the defendants objected to the question, arguing it was beyond the scope of Dr. Stokes's report. The trial court overruled the objection.

Thereafter, Falgout's counsel again asked Dr. Stokes, if Dr. Cenac opined Falgout would need a second anterior lumbar fusion at L5-S1 in 20 years, how much would it cost. Dr. Stokes indicated he would not have to do additional research to know the cost of the second anterior lumbar fusion at L5-S1 because his research for the first anterior lumbar fusion at L5-S1 was "so fresh." He specified that the cost of the second anterior lumbar fusion at L5-S1 would be the

same as the cost of the first anterior lumbar fusion at L5-S1. Thus, the cost of two surgeries would be the cost of the first surgery times two. Dr. Stokes further testified he did not know how much the surgery would cost in 20 years and the number he provided was the amount it would cost at the time of the trial. At the conclusion of the trial, the trial court awarded Falgout $538,943.64 in future medical expenses, which is the amount Dr. Stokes stated was the low cost for one anterior lumbar fusion at L5-S1 ($269,471.82) times two.

Dr. Stokes did not state his opinion as to whether Falgout would require a second anterior lumbar fusion at L5-S1 in the future. Dr. Stokes only stated that to determine the cost of a second anterior lumbar fusion at L5-S1, he would use the same research and numbers as the cost of the first anterior lumbar fusion at L5-S1. The trial court could have arrived at the same award for Falgout's future medical expenses without Dr. Stokes's testimony regarding the second surgery because both Dr. Cenac's deposition, which indicates a second surgery would be required in the future, and Dr. Stokes's expert report and testimony, which indicate the cost of an anterior lumbar fusion at L5-S1, were admitted at trial. Dr. Stokes did not testify beyond the scope of his report when he testified as to the cost of an anterior lumbar fusion at L5-S1, whether one or multiple of the same surgery is required, where no additional work was performed or required to formulate his opinion. Thus, the trial court did not abuse its discretion, and its decision regarding Dr. Stokes's testimony will not be disturbed on appeal. This assignment of error is without merit.

## CONCLUSION

For the above and foregoing reasons, the August 10, 2023 judgment of the trial court is affirmed. All costs of this appeal in the amount of $13,476.00 are assessed against American Alternative Insurance Corporation, Bayou Cane Fire Protection District, and Kenneth Himel.

10

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## DOCKET NUMBER

## 2023 CA 1291

## LLOYD FALGOUT

## VERSUS

## AMERICAN ALTERNATIVE INSURANCE CORPORATION, BAYOU CANE FIRE PROTECTION DISTRICT, AND KENNETH HIMEL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurring.**

While the record on occasion calls into question Mr. Falgout's honesty, given the evidence presented and the explanations provided by Mr. Falgout, and based on the manifest error standard of review and the deference owed to the credibility determinations of the trial court, I cannot find that the trial court erred. Thus, I concur in the result reached by the majority.